FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| KATHLEEN MUNIVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18cv1566 |
| ) | LMB/IDD |
| FAIRFAX COUNTY SCHOOL BOARD, et al., ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff, Kathleen Munive and respectfully submits her Complaint against Defendants Fairfax County School Board, Frances Ivey, Patricia Granada, Sandra Edwards, Kevin Sills, R. Chace Ramey, and Steven Lockard.

## INTRODUCTION

1. Plaintiff holds two Masters degrees, a PhD, and has been teaching English Speakers of Other Languages ("ESOL") for 23 years. She has spent 33 years in education. Most people with her experience, performance record, and qualifications would have been elevated to administrative positions long ago. But Plaintiff's career has been derailed by Fairfax County Public School's ("FCPS") pervasive culture of bullying and retaliation.

2. In 2016, Plaintiff filed a retaliation lawsuit against the Fairfax County School Board ("FCSB") after the Assistant Superintendent told her that HR would not remove a baseless Letter of Reprimand in Plaintiff's personnel file – despite school policy requiring them to do so – in order to "teach her a lesson" for filing a prior EEOC

complaint. FCPS was not chastened by the lawsuit; instead, they responded with a new campaign of retaliation against Plaintiff.

3. This campaign has proceeded on several fronts. School administrators have spread defamatory rumors about her, impugned her competence and integrity, and then refused to investigate Plaintiff's complaints or take corrective action. This has left Plaintiff socially ostracized and sent a clear a signal: if a teacher files a complaint, they will be left to the proverbial wolves. HR will not intervene if the complainant is bullied or harassed.

4. This campaign has also stalled her professional development. Promotion decisions in FCPS are highly political. In the FCPS system, it is a well-known fact that the easiest way to derail an employee's professional advancement is to circulate denigrating rumors and tarnish the employee's reputation internally. On this front, Defendants have succeeded: in June 2018, Plaintiff was passed over for a promotion by a teacher with a fraction of Plaintiff's experience and who had no PhD. Plaintiff has, in short, become a cautionary tale of what happens when a teacher speaks publicly against FCPS.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1983, supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b) because the unlawful actions that gave rise to Plaintiff's claims occurred in this district.

## PARTIES

7. Plaintiff Kathleen Munive is currently an English Speakers of Other Languages ("ESOL") Teacher at Mountain View Alternative High School.

8. Defendant Fairfax County School Board ("FCSB") is responsible for overseeing the operation and management of the public education system in Fairfax County.

9. Frances Ivey was the Assistant Superintendent of Region 5 until July 1, 2018, when she was promoted to Assistant Superintendent of the Fairfax County Public School ("FCPS") system.

10. Patricia Granada was principal of Eagle View Elementary School until the end of the 2017 school year, after which she became the principal of Greenbriar West.

11. Sandra Edwards was, during all times relevant to the instant complaint, the Assistant Principal of Eagle View Elementary School.

12. Kevin Sills was, during all times relevant to the instant complaint, the Director of the Office of Equity and Employee Relations ("EER") Office.

13. R. Chace Ramey was, during all times relevant to the instant complaint, Assistant Superintendent of Human Resources at FCPS.

14. Steven Lockard was, during all times relevant to the instant complaint, the Assistant Superintendent of FCPS or the Acting Interim Superintendent of FCPS.

Plaintiff's 2016 Lawsuit

15. In July 2007, Plaintiff filed an EEOC complaint against FCSB alleging race and gender discrimination. Around the same time, Plaintiff began filing yearly petitions to have a baseless Reprimand Letter removed from her file, each of which was rejected. In 2013, FCPS administrators told her why her requests were being rejected: she needed to be "taught a lesson" for filing the EEOC complaint.

16. After this admission, Plaintiff filed an EEOC complaint alleging retaliation. In April 2015, she received a determination from the EEOC that FCPS had retaliated against her, and in May 2016, Plaintiff received a Right to Sue Letter from the EEOC.

17. On August 21, 2016, Plaintiff filed a lawsuit in this Court alleging retaliation under Section 1983 and Title VII.

18. In addition to raising personal claims of discrimination and retaliation, the complaint raised issues of public concern. Among other things, the complaint alleged "a long pattern and practice of creating a hostile work environment and then retaliating against those who complain." The complaint listed numerous instances in which FCPS had retaliated against other employees for similar conduct. The complaint also alleged that FCPS was chronically late in sending Position Statements to the EEOC, hindered the investigation process, and had inadequate anti-retaliation and training policies.

19. On February 24, 2017, the Court granted the FCSB' motion to dismiss as to all claims. Plaintiff filed a timely appeal and the Fourth Circuit Court of Appeals reversed and reinstated her Title VII claims on November 7, 2017.

20. In or around January 2018, FCPS renewed a settlement offer, which Plaintiff rejected.

**Retaliation**

21. Defendants responded to the filing of the 2016 lawsuit (and Plaintiff's refusal to accept the settlement offer) in the same manner that they responded to Plaintiff's prior lawsuit: by retaliating against Plaintiff in a myriad of ways ranging from the subtle but pervasive, to blatant professional sabotage.

22. After the lawsuit was filed, Plaintiff met with Ramey and Sills to discuss the EEOC Letter of Determination. As the Director of EER, Sills' job was to be an impartial arbiter

between the teachers and administration. He was anything but. During that meeting, Sills raised his voice and berated her for being rude, combative, and dishonest. Ramey, on the other hand, made comments such as, "You want to be paid for doing nothing? What makes you think you deserve that?"

23. Sills' position gave him particular sway over promotion decisions in Plaintiff's school. His conduct during the meeting gave Plaintiff a reasonable fear that he would use his authority to obstruct her attempts to get promoted. That fear was subsequently proven correct.

24. Defendants also commenced a whisper campaign against Plaintiff designed to ostracize her from her colleagues and poison her relationship with the administrators and supervisors responsible for promoting her. For example, Plaintiff learned that in or around December 2016 that Granada and Edwards had begun spreading rumors that Plaintiff had vindictively filed a complaint against Eagle View Elementary School, which had embroiled several of her colleagues. Granada and Edwards knew that Plaintiff played no role in that complaint; the reason they spread those rumors was to tarnish Plaintiff's reputation, ostracize her from her colleagues, and cast her as a disloyal nuisance. They succeeded.

25. Plaintiff was approached by numerous colleagues who told her that she was being maligned as a "snitch." Another colleague threatened her: "You better be careful. You need to make sure which side you are on."

26. On January 24, 2017, Plaintiff emailed a copy of a complaint regarding this conduct to Ivey and requested an investigation. Two days later, Ivey responded that she would contact HR and request an investigation.

27. According to internal regulations, HR has to take action on such a request within 10 days. No action was taken; no investigation was initiated.

28. On February 16, 2017, Plaintiff filed four internal Workplace Harassment Complaints with Steven Lockard. The first complained that Ivey had failed to take action to investigate or curb the false and defamatory statements being made by Plaintiff's administrators about her.

29. The second internal Workplace Harassment Complaint concerned the meeting with Sills and subsequent negative statements he had made about Plaintiff. In this complaint, she stated her fear that Sills would use his influence and position of power to vilify Plaintiff and ensure that she was denied promotion.

30. The third internal Workplace Harassment Complaint concerned the false allegations by Granada and Edwards that Plaintiff had filed a complaint that had resulted in an investigation of Plaintiff's colleagues at Eagle View Elementary School.

31. The fourth internal Workplace Harassment Complaint stated that Ramey had been emailed Plaintiff's prior complaints against Sills, Granada, and Edwards, but had taken no action to investigate or halt the whisper campaign.

32. On February 24, 2017, Lockard emailed Plaintiff to confirm receipt of the complaints. In this email he stated: "We are in the process of reviewing your concerns and will be back with you as it relates to next steps.

33. To date, no one in FCPS has taken any steps to investigate those complaints. Plaintiff is aware of at least two other teachers who filed complaints against misconduct of a similar magnitude during this time period. Those complaints were fully investigated and corrective action was taken within weeks. The only difference between Plaintiff and

those other two teachers is that the latter did not file an EEOC complaint or lawsuit against the school.

34. Defendants' refusal to investigate the complaints has sent a clear signal: Plaintiff is fair game. The HR protections that FCPS offers against harassment, retaliation, bullying will not be extended to her or anyone else who dares file an EEOC complaint or a lawsuit against the school (system).

35. In June 2018, Plaintiff applied for a position as "Educational Specialist, ESOL," an administrative position which would have entailed greater responsibility and greater pay. Among the required qualifications in the job listing were a "Postgraduate Professional License" and at least five years of teaching. Plaintiff has two Masters degrees in education and a PhD in human development; she has more than 22 years teaching ESOL, 21 of which were at FCPS, and 33 years of teaching experience. She is a National Board Certified Teacher.

36. Despite these qualifications, Plaintiff did not even get an interview for the position. When she asked school administrators, they said that they wanted someone with more experience. However, this was a blatant pretext: Plaintiff subsequently learned that they had given the position to a man with approximately five years of teaching experience, who had one Masters' degree (compared to Plaintiff's two) and no PhD. The individual that got the position is also not a National Board Certified Teacher.

37. The real reason Plaintiff was passed over was to punish her for filing her federal lawsuit.

**Municipal Liability**

38. A municipal body, such the FCSB, may be held liable for violations of constitutional rights under Section 1983 where the violation occurs as a result of "an official

policy or custom.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). A policy or custom for which a municipality may be held liable can arise in four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law." *Id.* (quoting *Carter*, 164 F.3d at 217).

39. There is a long pattern and practice of administrators and individuals with final policymaking authority creating, endorsing, or displaying deliberate indifference to acts of retaliation against those who file complaints.

40. Plaintiff has experienced or otherwise observed this retaliatory culture for over a decade. For example, in November 2005, while Plaintiff was working in HR, a colleague told her that the principal was being abusive. When Plaintiff related the complaint to her supervisor, the supervisor replied: "Don't you know this is HR. We can do anything, except change what a principal wants or does. Be careful."

41. In March 2006, another employee asked Plaintiff about how she might transfer to another position without upsetting the principal. Again, Plaintiff ran the issue by her supervisor who responded: "She better be careful. If the principal wants her gone, it will happen. If she fights it, HR (meaning the Office of Equity and Compliance, now called EER) will make her life miserable. The mantra here [at FCPS] is: a woman will either emotionally break or become financially broke. So, they do whatever they can to drag out the process so we win, regardless of the truth." When Plaintiff responded that such

behavior was unlawful and unethical, her supervisor responded that nothing could be done because those sorts of decisions were made or ratified by people at the "top of the food chain." On information and belief, Plaintiff was referring to individuals with policymaking authority in FCPS.

42. These are but two of many examples.

43. In 2013, then Assistant Superintendent of HR, Phyllis Pajardo, told Plaintiff that the HR department and individuals in the FCPS Legal Department had decided to keep the Letter of Reprimand in Plaintiff's file to punish her for filing the EEOC complaint. Pajardo then said, "If you would have never gone the route of filing the complaint I would have put myself on high alert and been looking and asking more questions about your case and seriously would have considered taking the letter out."

44. In 2017, after the EEOC had issued its letter stating that FCPS had retaliated against Plaintiff and after Plaintiff had filed her retaliation lawsuit, Pajardo was sworn in as the Superintendent of City of Fairfax Schools.

45. On information and belief, the entire Board and those with final policymaking authority at FCPS were aware of the allegations – credited by the EEOC – that Pajardo had sanctioned retaliatory conduct against an employee in violation of Title VII. Their decision to promote her despite this knowledge is, at best, an act of deliberate indifference and, at worse, a ratification of that sort of conduct.

46. Administrators in FCPS have also called Plaintiff a "Lying Bitch" and a "Fucking Whore." Plaintiff was once told, "We are the administrators. We can do anything. It doesn't matter whether it is right or wrong, legal or illegal. You are just a peon and HR will always support us."

47. These practices are allowed to run rampant because the Board has refused to train FCPS administrators or employment personnel. Despite repeated promises to the EEOC that it would reform its anti-retaliation and non-discrimination policy and direct-mail the newest version of the policies to every employee, the Board has dragged its feet for years. FCPS has not taken any meaningful steps to correct the deficiencies in the way they handle teacher complaints.

48. The Board has also supported or protected administrators who have been accused of misconduct by, among other things, sending in late Position Statements to the EEOC, refusing to engage in mediation, refusing to reprimand individuals subject to credible accusations of unlawful conduct, and by turning a blind eye to retaliatory conduct.

49. Three Superintendents and one Interim Superintendent have been advised of Plaintiff's situation. In April 2012, Plaintiff contacted the School Board Chair to complain about retaliation. The Chair and another board member, refused to intervene and told her to contact Pajardo, despite knowing that Pajardo was one of the people who sanctioned the retaliation. In April 2013 and April 2014, Plaintiff requested a meeting with the succeeding Superintendent, who also refused to meet with her or take any steps to redress the retaliatory actions taken against her. In August 2015, Plaintiff again sought assistance from the Interim Superintendent and complained that school administrators were obstructing the EEOC's investigation. Again, her request for assistance was rebuffed. Plaintiff continued to ask for assistance from members of the FCBS and to advise them and the Superintendent about the culture of retaliation that exists in FCPS.

50. Plaintiff has been told by members of the Fairfax Federation of Teachers that numerous other individuals have been retaliated against and have either complained to the Board or filed formal complaints, but that the Board has done nothing to address the complaints.

## COUNT ONE

### Retaliation in Violation of Section 1983

51. Plaintiff incorporates paragraphs 1-50 by reference.

52. Defendants have retaliated against Plaintiff for exercising her First Amendment right to file an anti-retaliation lawsuit and for speaking about matters of public concern relating to FCPS's culture of unlawful discrimination and intimidation.

53. Defendants have retaliated against Plaintiff by defaming and maligning her, creating a hostile work environment, withdrawing HR protections from her, and refusing to promote her despite having superior credentials to the person who ultimately received the position.

54. As a result of these retaliatory acts, Plaintiff has lost job opportunities, lost the support and companionship of colleagues, and suffered severe emotional distress and psychological trauma.

55. Defendants' unlawful and retaliatory conduct in violation of Section 1983 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

    A. A declaratory judgment that the actions, conduct, and practice of Defendants complained of herein violate the laws of the United States.

B. An order directing Defendants to place Plaintiff in the position she would have occupied but for the retaliatory treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect her employment and personal life;

C. An award of compensatory and punitive damages in an amount to be determined at trial;

D. An award of costs that Plaintiff has incurred in this action, as well as attorneys' fees; and

E. Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: December 12, 2018

Respectfully submitted,

Kathleen B. Munive
*Kathleen B. Munive*

6916 Kona Drive
Gainesville, VA 20155
703-819-3843

## CERTIFICATION

I declare under penalty of perjury that:

(1) No attorney has prepared, or assisted in the preparation of this document.

_____
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)

**OR**

(2) <u>Joseph Pace</u>
(Name of Attorney)

<u>212 W. 111th St, Apt 1A, New York, NY, 10026</u>
(Address of Attorney)

<u>(646) 300-4304</u>
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

<u>Kathleen Munive</u>
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)

43