IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| KATHLEEN MUNIVE, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-cv-1566 (LMB/IDD) |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is the defendants' Motion to Dismiss, to which plaintiff has filed an Opposition.[1] For the reasons stated in open court,[2] and as further developed in this Memorandum Opinion, defendants' Motion has been granted, and this civil action has been dismissed.

## I. BACKGROUND

Plaintiff Kathleen Munive ("plaintiff" or "Munive") alleges in a one-count Complaint that defendants Fairfax County School Board ("FCSB"), Frances Ivey ("Ivey"), Patricia Granada ("Granada"), Sandra Edwards ("Edwards"), Kevil Sills ("Sills"), R. Chase Ramey ("Ramey"), and Steven Lockard ("Lockard") (collectively, "defendants") violated 42 U.S.C. § 1983 by retaliating

---

[1] Plaintiff was afforded extra time to file her Opposition because she lists herself as pro se, but she has been assisted in this and prior litigation by a New York attorney who is not admitted to practice in this Court and does not appear to be licensed to practice in Virginia. Accordingly, although pleadings filed by a pro se party must be "liberally construed" and not held to the same standards as those filed by lawyers, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted), this Complaint will not receive such solicitude because it was drafted with the assistance of counsel.

[2] Although the original hearing date for this Motion was Friday, April 12, 2019, it was continued two weeks after plaintiff asked defendants to notice an amended hearing date. See Dkt. No. 14. Despite the continuance, plaintiff did not appear at the hearing.

against her for exercising her First Amendment right to file an anti-retaliation lawsuit in 2016 against defendant FCSB and four other school officials.

The Complaint alleges that plaintiff is a long-time employee of the Fairfax County Public Schools ("FCPS") system and is currently an English Speakers of Other Languages ("ESOL") teacher at the Mountain View Alternative High School. Compl. [Dkt. No. 1] ¶ 7. She first became aware of the FCPS' "retaliatory culture" in November 2005, when she complained to her supervisor about a principal and was told: "Don't you know this is HR. We can do anything, except change what a principal wants or does. Be careful." Id. ¶ 40. In March 2006, plaintiff was again told by her supervisor "[i]f the principal wants her gone, it will happen. If she fights it, HR will make her life miserable." Id. ¶ 41.

In 2007, plaintiff filed an EEOC complaint against the FCSB alleging that the placement of a reprimand letter in her personnel file constituted race and gender discrimination. Id. ¶ 15. Although she has made annual requests for the reprimand letter to be removed from her file, the requests have been rejected. Id. The Complaint alleges that in 2013 Phyllis Pajardo ("Pajardo"), then-Assistant Superintendent of HR,[3] told her that her requests were being rejected so that she would be "taught a lesson" not to file any future EEOC complaints. Id. Based on that statement, plaintiff filed an EEOC complaint alleging that the refusal to remove the reprimand from her personnel file constituted retaliation for her prior EEOC complaint. Id. ¶ 16. In April 2015, plaintiff received a determination from the EEOC that the FCSB had retaliated against her, and in May 2016 she received a Right to Sue letter from the EEOC. Id.

---

[3] Pajardo was named as a defendant in the 2016 Complaint but is not named as a defendant in this lawsuit. She has since become the Superintendent of the City of Fairfax Schools. Id. ¶ 44.

2

In August 2016, plaintiff filed a lawsuit in this court alleging retaliation by the FCSB, Debra Reeder, Kevin North, Jack Dale, and Phyllis Pajardo in violation of Title VII and § 1983. Id. ¶¶ 17–18; 2016 Compl. [Dkt. No. 5-A] 1. Defendants' Motion to Dismiss was granted after the Court found that refusal to remove the reprimand letter did not constitute the materially adverse action element required of a Title VII retaliation claim and that the actions of neither the FCSB nor the individual defendants happened within § 1983's two-year statute of limitations. Compl. ¶ 19; Case No. 1:16-cv-1075-CMH, Mem. Op. (E.D. Va. Feb. 21, 2017) [Dkt. No. 19] 11–18. On appeal, the Fourth Circuit reversed and remanded only plaintiff's Title VII retaliation claim,[4] finding that the denial of plaintiff's "request to remove the reprimand letter constituted a discrete act of retaliation." See No. 17-1692, Op. (4th Cir. Nov. 7, 2017) [Dkt. No. 32] 4.[5]

In the instant Complaint, Munive alleges that defendants retaliated against her for filing the 2016 lawsuit, which she alleges constituted protected First Amendment activity, specifically protected speech. Compl. ¶ 21. Plaintiff alleges that after the EEOC Right to Sue letter was issued in May 2016, she had a meeting with defendants Ramey, Assistant Superintendent of Human Resources, and Sills, Director of the Office of Equity and Employee Relations Office, to discuss the EEOC letter. Id. ¶ 22. At this meeting, Sills allegedly "raised his voice and berated her for being rude, combative, and dishonest" and Ramey allegedly "made comments such as, 'You want to be paid for doing nothing?'" Id. Other defendants allegedly "commenced a whisper campaign" against plaintiff. Specifically, defendants Granada, then-Principal of Eagle View Elementary School ("Eagle View"), and Edwards, Assistant Principal of Eagle View, allegedly "began

---

[4] Plaintiff did not contest the dismissal of her § 1983 claims. See No. 17-1692, Op. (4th Cir. Nov. 7, 2017) [Dkt. No. 32] 2.

[5] Although that civil action was remanded in November 2017, plaintiff has taken no action to pursue her claims and that civil action has been listed as "closed" on the civil docket. Plaintiff indicates that she rejected a settlement offer of that action in January 2018. Compl. ¶ 20.

3

spreading rumors" that plaintiff had "vindictively" filed a complaint against Eagle View, although plaintiff claims she "played no role" in that complaint Id. ¶¶ 22–24. The Complaint also alleges that numerous colleagues, not named as defendants, "threatened her" and "maligned her as a 'snitch.'" Id. ¶ 25.

On January 24, 2017, plaintiff complained about this conduct to defendant Ivey, then-Assistant Principal of Region 5, who allegedly told plaintiff that she would contact HR to request an investigation into plaintiff's claim, but no investigation was initiated. Id. ¶¶ 26–27. On February 16, 2017, plaintiff filed four internal workplace harassment complaints with defendant Lockard, Assistant Superintendent or the Acting Interim Superintendent of FCPS. Id. ¶ 28. Although plaintiff received an e-mail from Lockard stating that he was in the process of reviewing her concerns, she has not heard back. Id. ¶¶ 32–33.[6]

In June 2018, plaintiff applied for a promotion but was passed over in favor of a man with only five years of teaching experience (compared to plaintiff's 33 years), one Masters' degree (compared to plaintiff's two), and no PhD (plaintiff has a PhD). Id. ¶¶ 35–36. The position she sought was as an "Educational Specialist, ESOL" and "would have entailed greater responsibility and greater pay." Id. ¶ 35. She alleges that she was passed over as punishment for filing her 2016 lawsuit. Id. ¶ 37. Plaintiff seeks declaratory judgment, injunctive relief, compensatory and punitive damages, and attorneys' fees and costs.

---

[6] The complaint alleges that at least two other teachers who have not filed EEOC complaints or lawsuits have filed internal complaints that were fully investigated and corrected within weeks. Id. ¶ 33.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint should be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In determining whether a complaint states a claim on which relief may be granted, the court must "assume that the facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor," Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002), but only to the extent that those allegations pertain to facts rather than to legal conclusions, Iqbal, 556 U.S. at 678. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"; instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### B. Analysis

#### 1. Section 1983

Plaintiff claims that defendants have retaliated against her for exercising her First Amendment right to file an anti-retaliation lawsuit and for speaking about matters of public concern relating to "FCPS's culture of unlawful discrimination and intimidation." Compl. ¶ 52.[7] Under § 1983, any person "who under color of any statute, ordinance, regulation, custom, or usage, . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the

---

[7] Plaintiff has not alleged, neither in her Complaint nor in her Opposition to defendants' Motion to Dismiss, a violation of her right to petition the government, only her right to free speech.

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

2. First Amendment Claim

Defendants' first argument is that plaintiff's 2016 lawsuit does not qualify as public speech protected by the First Amendment. A public employer is "prohibited from discharging or taking other adverse action against one of its employees on a basis that infringes the employee's constitutionally protected interest in freedom of speech." Edwards v. City of Goldsboro, 178 F.3d 231, 245–46 (4th Cir. 1999) (citations omitted). The Court must "balance the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees." Id. (internal quotation marks omitted) (citing Pickering v. Board of Educ., 391 U.S. 563, 574 (1968)). First, the Court must determine whether plaintiff "was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest." Id. (citation omitted). The public concern inquiry asks "whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee." Berger v. Battaglia, 779 F.2d 992, 999 (4th Cir. 1985) (internal quotation marks omitted). Only if plaintiff was speaking about a matter of public concern does the Court proceed to ask whether her "interest in speaking upon the matter of public concern" outweighs the FCSB's "interest in providing effective and efficient services to the public." Edwards, 178 F.3d at 247 (citation omitted).

"It is settled that a public employee's expression of grievances concerning his own employment is not a matter of public concern." Huang v. Bd. of Governors of the Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990). Plaintiff contends that her 2016 Complaint describes a "culture" and "long pattern and practice of creating a hostile work environment and then

6

retaliating against those who complain," Mem. in Opp'n to Defs.' Mot. to Dismiss [Dkt. No. 11] ("Opp'n") 2, but those allegations are far from the focus of the 2016 Complaint. The thrust of plaintiff's previous Complaint is that the FCSB and the individual defendants allegedly retaliated against plaintiff by refusing to remove a reprimand letter issued in 2006 from her personnel file. In Campbell v. Galloway, 483 F.3d 258 (4th Cir. 2007), the Fourth Circuit found a letter which focused on personal grievances but nonetheless raised important questions of sexual harassment to be of public concern because that speech detailed repeated sexual harassment of numerous employees, as well as members of the public, see id. at 267–70, whereas the 2016 Complaint alleges no repeated retaliation against anyone other than plaintiff.

Furthermore, the 2016 Complaint's general claim of a "retaliatory culture" is supported by only two examples, neither of which involve protected activity. See 2016 Compl. ¶¶ 52–53. These two incidents occurred in 2005 and 2006, a full decade before the 2016 Complaint was filed. Id. The November 2005 incident involved plaintiff complaining to her supervisor about a principal and being told: "Don't you know this is HR. We can do anything, except change what a principal wants or does. Be careful." Id. ¶ 52. The March 2006 incident involved plaintiff being told by her supervisor "[i]f the principal wants her gone, it will happen. If she fights it, HR will make her life miserable." Id. ¶ 53. These two incidents merely involve comments and do not describe any retaliatory or adverse actions themselves, nor are they described as relating to anyone's protected status. Therefore, they are insufficient examples to support the claim that the FCSB has a pattern or practice of retaliating against those who complain.

Plaintiff's 2016 Complaint also describes "matters of internal policy, including mere allegations of favoritism, employment rumors, and other complaints of interpersonal discord," which "are not treated as matters of public policy." Goldstein v. Chestnut Ridge Volunteer Fire

7

Co., 218 F.3d 337, 352 (4th Cir. 2000). Although the speech involved in a "publicly-filed federal lawsuit" does carry more weight than an "internal workplace grievance," see Vollette v. Watson, No. 2:12cv231, 2012 WL 3026360, at *10 (E.D. Va. July 24, 2012) (finding that nine contemporaneously filed federal complaints allege "a far more sweeping failure to comply with the dictates of the Constitutional than would a private internal complaint of a single employee"), simply continuing to pursue a personal grievance by filing a lawsuit cannot in and of itself transform the grievance into a matter of public concern. Furthermore, the remedies plaintiff sought in the 2016 Complaint focus on solving only her personal problems. Although plaintiff sought a declaratory judgment that defendants' actions were unconstitutional, all the other relief requested was for plaintiff, who sought money damages and being placed "in the position she would have occupied but for the retaliatory treatment." 2016 Compl. 14–15. That plaintiff sought primarily personal redress further weighs in favor of finding that her speech in the 2016 Complaint was "more properly viewed as essentially a private matter between employer and employee," Berger, 779 F.2d at 999 (internal quotation marks omitted), rather than as a matter of public concern. Because the sole legal theory underlying her 2018 Complaint is that the 2016 lawsuit qualified as speech protected by the First Amendment, the 2018 Complaint has been dismissed for failing to state a cause of action.

### 3. Claim Against FCSB

In the alternative, defendants argue that plaintiff has failed to adequately plead a § 1983 claim against the FCSB, either directly or through the actions of its employees. Generally, a municipality, including a school board, cannot be held liable for a § 1983 violation solely because an employee causes an injury. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694–96 (1978). Liability arises only where the constitutionally offensive acts of employees are taken in furtherance of some municipal "policy or custom." Id.; see also Milligan v. City of Newport

News, 743 F.2d 227, 229 (4th Cir. 1984). "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train [employees], that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks and citations omitted). Plaintiff must allege sufficient facts to make out a plausible claim that certain acts were taken in furtherance of a municipal policy or custom for the FCSB to be liable under § 1983, and because plaintiff has failed to do so, her Complaint is subject to dismissal on this ground as well.

a. Direct Action

Plaintiff has failed to allege any action taken directly by the FCSB after she filed her 2016 lawsuit. The only incidents which explicitly name the FCSB as the actor occurred in 2012, when plaintiff alleges the FCSB directed her to speak to Pajardo, who she claims was retaliating against her, see Compl. ¶ 49, and in her EEOC proceedings before she filed her 2016 lawsuit, when the FCSB allegedly refused to meet with her or work to address her complaints, see id. ¶¶ 48–49. Because these actions occurred before she filed the 2016 lawsuit, they obviously could not have been done to retaliate against her for filing the 2016 lawsuit.

Plaintiff also appears to want to hold the FCSB liable for failing to promote her in June 2018 as retaliation for her filing the 2016 lawsuit, but she fails to attribute the decision to hire the allegedly less qualified male to a specific defendant. See Compl. ¶¶ 35–37. Although alerted to this defect in defendants' Motion to Dismiss, see Mem. in Supp. of Defs.' Mot. to Dismiss [Dkt. No. 5] ("Mem.") 10, plaintiff did not provide any more specificity in her Opposition, simply

responding that she was denied a promotion "as a result" of "the culture of retaliation" and that FCSB "either actively encouraged or was deliberately indifferent to" that culture. Opp'n 5. Defendants argue that plaintiff "expressly attributes the alleged wrongdoing—not to any direct action of the School Board—but to a so called 'culture of retaliation.'" Reply Br. in Supp. Defs.' Mot. to Dismiss [Dkt. No. 12] ("Reply") 7. The FCSB "is only liable for acts that it has 'officially sanctioned or ordered'" and it "cannot be held liable for personnel decisions over which it did not retain final review authority . . . because there is no respondeat superior liability under § 1983." Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (citations omitted). Plaintiff must allege facts, not hypotheses, that the FCSB was "aware of the constitutional violation and either participated in it, or otherwise condoned, it." Id. at 783 (citation omitted). Plaintiff has not done so. Therefore, as pleaded, the Complaint fails to allege a plausible claim against the FCSB, a deficiency which further supports dismissal of this defendant.

  b. Indirect Action

Plaintiff argues that the FCSB "either actively encouraged or was deliberately indifferent to the culture of retaliation that existed within the school system, and that as a result of that culture, [she] was the subject of a whisper campaign, denied HR protections, and ultimately denied a promotion in the summer of 2018." Opp'n 5. Although plaintiff has alleged a few instances of retaliation, she has not adequately alleged a "practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle, 326 F.3d at 471. Other than her own claim, plaintiff has only alleged two other incidents that suggest retaliatory behavior, each over ten years old. As she did in her 2016 Complaint, she points to the same 2005 and 2006 incidents when she was told that HR could make her life miserable if she complained about a principal. Compl. ¶¶ 40–41. The 2018 Complaint fails to allege facts showing that the FCSB has a

custom or practice of retaliating against teachers, let alone against those who exercise their First Amendment rights. Plaintiff makes much of an alleged rumor campaign against her, but rumor campaigns are not considered adverse actions, and the vague statement that "she has brought to the Board's attention other instances of retaliation, but the Board has done nothing," is insufficient to make out a plausible claim against the FCSB. Opp'n 8.[8] These pleading failures further support dismissal of the FCSB from this litigation.

4. Claims Against Individuals

The individual defendants argue that the Complaint fails to allege a plausible § 1983 claim against them because none of the actions in which plaintiff claims they engaged constitute adverse employment actions. To state a § 1983 claim against any of the individual defendants, plaintiff must allege that the defendant (1) deprived her of a right secured by the Constitution and laws of the United States and (2) that the deprivation was performed under "color of law." See Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001). Assuming that plaintiff's speech in the 2016 lawsuit was protected because it constituted a matter of public concern which outweighed the employer's interest in efficiency, which this Court holds that it does not, a plaintiff claiming retaliation under § 1983 must allege sufficient facts to make out a plausible claim that the defendant's alleged retaliatory action adversely affected her constitutionally protected speech. Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000). The nature of retaliatory acts committed by a public employee must be more than de minimis or trivial. Id. (citations omitted). Sufficiently severe retaliatory acts include decisions regarding "promotion, transfer, recall, and hiring." Id. (citations omitted). Criticism, false accusations, or verbal reprimands do not constitute

---

[8] Specifically, in neither her Complaint nor Opposition to the Motion to Dismiss does plaintiff identify what specific instances of retaliation she brought to the FCSB's attention or how and when she did so.

11

actionable adverse employment actions. Id. (citations omitted). The plaintiff must also allege a "causal relationship between the protected speech and the retaliatory employment action; specifically, 'the protected speech [must be] a 'substantial factor' in the decision to take the allegedly retaliatory action.'" Love-Lane, 255 F.3d at 776. Even assuming the 2016 Complaint constituted protected speech, this Complaint lacks the other requisite allegations as to each of the named defendants. Therefore, dismissal of these defendants is appropriate.

    a. Defendants Granada and Edwards

The Complaint alleges that, in December 2016, Granada, who was the Principal of Eagle View through the 2017 school year, and Edwards, who is the Assistant Principal of Eagle View, spread rumors that plaintiff had "vindictively filed a complaint against Eagle View," despite knowing that she had "played no role in that complaint," but did so "to tarnish Plaintiff's reputation, ostracize her from her colleagues, and cast her as a disloyal nuisance." Compl. ¶¶ 10–11, 24. Even if such conduct occurred, nothing in the Complaint alleges that these rumors were spread in retaliation for plaintiff filing the 2016 lawsuit.

Plaintiff also fails to allege facts upon which the Court could find that these rumors were spread "under the color of law." See Mentavlos, 249 F.3d at 310 ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citations omitted)); Hughes v. Halifax Cnty. Sch. Bd., 855 F.2d 183, 186–87 (4th Cir. 1988) (coworkers were not acting under the color of law when they taunted and threatened the plaintiff over his participation in a grand jury investigation of the school board they worked for). Plaintiff attempts to analogize her situation to that in Rossignol v. Voorhaar, 316 F.3d 516 (4th Cir. 2003), in which the deputy sheriff defendants acquired all the plaintiff's newspapers published for distribution on Election Day, which were known to be critical

of local government, id. at 521–22. The Fourth Circuit found that the action was "perpetrated under color of state law" because the defendants acted "to retaliate against those who questioned their fitness for public office and who challenged many of them in the conduct of their official duties." Id. at 523. The "requisite nexus between the defendant's public office and their actions" is not present in this case. Id.

Furthermore, "where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." Suarez, 202 F.3d at 687 (citation and footnote omitted). Although defendants Edwards and Granada are both state employees, the rumors described by plaintiff do not qualify as the type of conduct that supports a § 1983 retaliation claim.[9]

b. Defendants Sills

Plaintiff alleges that after the 2016 lawsuit was filed, she met with defendants Sills, who was the Director of the Office of Equity and Employee Relations Office, and Ramey, who was the Assistant Superintendent of Human Resources, to discuss the EEOC Right to Sue letter. Compl. ¶¶ 12–13, 22. At that meeting, Sills allegedly "raised his voice and berated her for being rude, combative, and dishonest." Id. ¶ 22. As a result, plaintiff was concerned that Sills would "use his authority to obstruct her attempts to get promoted." Id. ¶ 23. During the meeting, Ramey allegedly "made comments such as, 'You want to be paid for doing nothing?'" Id. ¶ 22. The Complaint does

---

[9] Plaintiff states that, if granted leave to amend, she would allege that these two defendants spread these rumors to punish her for "repeatedly speaking out against the culture of retaliation at FCPS and for filing her complaint." Opp'n 8–9. This clarification would be insufficient as plaintiff also fails to allege any facts showing that either defendant knew plaintiff had filed her complaint. Neither of these defendants were named as defendants in that complaint, nor were they mentioned in it.

not allege that either defendant had the specific intent to retaliate against her, but in her Opposition, plaintiff argues that these statements were made to punish her for speaking out against the FCPS. Opp'n 9. Although plaintiff alleges that she feared that Sills would obstruct her attempt to get promoted, which fear she claims "was subsequently proven correct," Compl. ¶ 23, she does not actually specify what she means. To the extent plaintiff may have been referring to the June 2018 denial of her promotion, defendants point out that Sills stopped working for FCPS eight months before plaintiff was denied that promotion, a fact which defeats any claim that he was involved in that decision. The Complaint does not identify any involvement of Ramey in the promotion decision. Reply 12. Therefore, there are no cognizable claims against these two defendants.

  c. Defendants Ramey, Lockard, and Ivey

Plaintiff alleges that defendants Ramey, Lockard, who was then an Assistant Superintendent of FCPS, and Ivey, who was an Assistant Superintendent of Region 5 and is now the Superintendent of FCPS, failed to investigate four workplace harassment claims she filed on February 16, 2017. Compl. ¶¶ 9, 13–14. Her first complaint concerned Ivey failing to investigate and stop the rumors about plaintiff. Id. ¶ 28. Her second complaint concerned her previously described meeting with Sills, in which he yelled at her. Id. ¶ 29. Her third complaint concerned the rumors spread by Granada and Edwards. Id. ¶ 30. Her fourth complaint concerned Ramey failing to investigate plaintiff's prior complaints against Sills, Granada, and Edwards. Id. ¶ 31. The 2018 Complaint fails to allege a specific motive for any of these defendants failing to investigate plaintiff's complaints. Plaintiff responds to this defect by arguing that the "only conceivable reason" these defendants did not "act promptly" to process her complaints was to "teach her a lesson for speaking out." Opp'n 9.

14

To state a § 1983 claim against an individual defendant, that defendant must have deprived plaintiff "of a right secured by the Constitution and laws the United States." Mentavlos, 249 F.3d at 310. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Johnson-El v. Beck, No. 3:11-cv-115, 2011 WL 1155679, at *3 (W.D.N.C. Mar. 25, 2011) (quoting Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)). Accordingly, plaintiff's claims against defendants Ramey, Lockard, and Ivey for failure to investigate fail as a matter of law.

Plaintiff's only cognizable claim would be against the decisionmaker behind the promotion decision, but plaintiff would have to allege specific facts making out a plausible claim that the decision not to promote her was animated by a retaliatory animus. In other words, plaintiff would have to allege that the decisionmaker did not promote her because she had filed the 2016 lawsuit against the FCSB, which means the decisionmaker must have been aware of that lawsuit. Plaintiff has not identified who made the decision not to promote her. In sum, the multiple defects in the allegations against the individual defendants provide an additional reason for dismissing this Compliant.

5. Punitive Damages

Plaintiff's claim against the FCSB for punitive damages must be dismissed with prejudice because the FCSB is immune from punitive damages in § 1983 claims. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (holding that a municipality is immune from punitive damages under § 1983). Plaintiff is also not entitled to recover any attorney's fees and expenses because pro se parties are not entitled to such expenses. To the extent plaintiff has been getting help from a lawyer who is not licensed to practice in this court, she is not entitled to claim any of those expenses.

## III. CONCLUSION

For the reasons stated in open court and further developed in this Memorandum Opinion, plaintiff has failed to state a § 1983 claim for retaliation and defendants' Motion to Dismiss has been GRANTED.

Entered this 5th day of June, 2019.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge